IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOEL CALDERON,

       Plaintiff,

      vs.                                                    Civil No. 11-00482  WJ/GBW

JESSE HERRERA and the
JESSE HERRERA LAW FIRM, P.C.,

       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S REQUEST FOR EVIDENTIARY HEARING;**
**DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT;**
**GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT,**
**LIFTING ENTRY OF DEFAULT**
**AND**
**IMPOSING SANCTIONS IN FORM OF ATTORNEY'S FEES AND COSTS ON DEFENDANTS**

THIS MATTER comes before the Court upon Plaintiff's Motion for Default Judgment as to Defendants and Request for Evidentiary Hearing, filed October 18, 2011 **(Doc. 10)**; and Defendant's Motion to Set Aside Default, filed November 23, 2011 **(Doc. 11)**. The Court held a hearing on the motions on March 29, 2012, at which time the Court allowed Defendants an opportunity to brief the issue of whether they have a sufficient meritorious defense to withstand Plaintiff's motion for default judgment. Both parties have submitted briefs on the issue. The Court's findings below are based on the parties briefs on the motions, the testimony and evidence presented at the hearing, and the supplemental briefing on the issue of a meritorious defense. Having considered the parties' briefs and the applicable law, I find that Plaintiff's Motion for Default Judgment is granted in part as to the evidentiary hearing, but denied as to entering a default judgment; and that Defendant's Motion to Set Aside Default is granted.

**Background**

The complaint in this case is essentially a legal malpractice case, alleging legal malpractice by the Jesse Herrera Law firm ("Defendants" or "Herrera"), breach of contract, misrepresentation and fraud. In August 2007, Plaintiff and the Defendants entered into a contract that Defendants would file claims and legal actions against those responsible for the deprivation of Plaintiff's constitutional rights and injuries he suffered as a shooting by members of the Las Cruces Police Department in Las Cruces, New Mexico. Plaintiff Calderon was a minor at the time of the 2006 shooting.

According to the Complaint, Mr. Herrera accepted a $2,000 retainer, but did nothing on the case except to file the complaint a year later. The complaint that was filed included only claims brought under the New Mexico Tort Claims Act, without any claims brought for violations of Plaintiff's civil rights. In April, 2010, Plaintiff's mother inquired about the status of the case with the federal court in Las Cruces, New Mexico. She discovered that the case had been dismissed in December 2009 because Defendants had failed to comply with two scheduling orders issued by the Court and had also failed to respond to a Notice of Intent To Dismiss. Plaintiff claims that the case was dismissed with prejudice and cannot be re-filed because of the statute of limitations. Plaintiff contends that his damages for what would have been alleged civil rights violations amounted to at least $1 million.

Mr. Herrera was not unfamiliar to Plaintiff's family, having represented Plaintiff's father in a separate civil case, and thus having had regular communication with the family. Mr. Herrera contends that he was approached by Plaintiff's mother regarding representing her son in the underlying lawsuit. He received a $2,000.00 retainer on August 15, 2007. Because Mr. Herrera was not licensed to practice law in the State of New Mexico, he had contacted Mr. Jeffrey Smith, a New Mexico attorney with whom he associated for the case, and paid Mr. Smith

2

$1,000.00 for handling the case. Mr. Herrera states that Mr. Smith was responsible for filing the complaint in the underlying case, and that Mr. Smith received all the discovery notices regarding the complaint at his office. Mr. Herrera claims that a few months after the complaint was filed, he discovered that Plaintiff had been arrested in Las Cruces for various offenses related to a drive-by shooting, and that Plaintiff had pled guilty to some of these offenses. After learning about these charges, Mr. Herrera discussed them with Mr. Smith in terms of the effect they would have on the lawsuit — in particular, the negative effect that Plaintiff's recent violent felonies and incarceration would have on his credibility as a witness. He informed Plaintiff that they were no longer interested in representing him and advised him to find other representation. Mr. Herrera then returned to Plaintiff's mother the remainder of the retainer, which was $1,500.00. However, based on the Court's understanding of the time line, the retainer was returned to Plaintiff's mother after the case had already been dismissed for failure to prosecute.

A Clerk's Entry of Default in the instant case was filed on September 27, 2011 (Doc. 8, "Amended Clerks Entry of Default"). Subsequently, Plaintiff filed a motion for default judgment by the Court on October 18, 2011 (Doc. 10), and Defendants filed a motion to set aside the Clerk's entry of default..

## Discussion

Defendants contend that default judgment is not proper because service was not effective, and because it is not warranted under the Federal Rules of Civil Procedure. At the hearing, the Court ruled that Rule 55(c), which requires a lesser standard for the defaulting party than the excusable neglect standard of Rule 60(b), applies in this case. *See Dennis Garberg & Associates, Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997) (comparing

standards under the two rules).[1]

Rule 55(c) allows the court to set aside an entry of default for good cause. The principal factors in determining whether a defaulting party has met the good cause standard are (1) whether the default resulted from culpable conduct by defendant, (2) whether plaintiff would be prejudiced if the default is set aside, and (3) whether defendant has presented a meritorious defense. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). However, the preferred disposition of a case is on its merits. *Id*. Generally, a party's conduct will be considered culpable if the party defaulted willfully or has no excuse for the default. *Wallace v. McManus*, 776 F.2d 915, 917 (10th Cir. 1985).

**I.      Service**

As part of showing of good cause on the first prong, Defendants argued at the hearing that there is no culpability or willfulness on their part because service was not proper. Mr. Herrera claims he found out about this case only when he received a letter informing him about the Clerk's entry of default. Plaintiff contends that, even assuming service was improper, Defendants had actual notice of the filing of this action, but chose to ignore it. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties. *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc*., 340 F.3d 345, 353 (6th Cir. 2003). Therefore, if service of process was not proper, the court must set aside an entry of default. *Id*.

---

[1] It has been noted that the Rule 55(c) standard is applied generously where only a default has been entered, with no accompanying default judgment. *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc*., 616 F.3d 413, 420 -421 (4th Cir. 2010; *see also Cracco v. Vitran Exp., Inc.,* 559 F.3d 625 (7th Cir. 2009).

The Court notes, however, that ineffective or improper service in itself would provide a basis for a finding of a void default judgment under Rule 60(b)(4). *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3rd Cir. 1985).

In this case, service was required both as to Mr. Herrera personally as well as the Herrera Law Firm. Service upon an individual under the federal rules requires that a copy of the summons and complaint be delivered to the individual personally, or by leaving a copy of the documents at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed.R.Civ.P. 4(e)(2). Service upon a corporation requires that a copy of the summons and complaint must be delivered to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(h)(1)(B). Defendants contend that service was ineffective as to both Mr. Herrera and the law firm, because Mr. Herrera's receptionist was not authorized to accept service under either method.

It is undisputed that in June, 2011, Plaintiff's counsel asked Mr. Herrera if he would accept service, but he refused. Doc. 11 at 2. Mr. Herrera stated that he then waited to be served personally, but that never happened. Plaintiff claims that Mr. Herrera was "served" at his office by mail with a copy of the summons, complaint, civil cover sheet and Acceptance of Service form on June 28, 2011; and that Mr. Herrera's office receptionist, Pauline Sanchez, signed for the package. In addition, Judith Seff, the office manager for Plaintiff's counsel stated in an affidavit that on August 18, 2011, she personally delivered to Herrera's offices the same documents, which were accepted by Ms. Sanchez and who assured Ms. Seff that Herrera would receive them. Pltff's Ex. 1.

Entries on the Court's docket show two entries of executed summons (Docs. 3 and 4). Doc. 3 indicates that service was executed on "Jesse Herrera" by service upon "Pauline Sanchez, Receptionist" by Judith Seff, who is the office manager for Plaintiff's counsel. Doc. 4 indicates that the "Jesse Herrera Law Firm, P.C." was also served by leaving the documents with "Paulina [sic] Sanchez @ the Jesse Herrera," again by Ms. Seff. However, these docket entries do not

5

necessarily resolve the question of whether service was proper.  At the hearing Ms. Sanchez, described the office policy regarding incoming documents.  Ms. Sanchez testified that she accepts the incoming certified mail, listing them in a logbook for that purpose, but does not open the certified mail.  She stated that she does not sign for any mail other than certified mail.  She was also required to bring to Mr. Herrera's attention any mail that is logged in.  Ms. Sanchez also testified that, while she signs for certified mail directed to Mr. Herrera and the law firm, she does not accept pleadings that are handed to her or sign for documents that are to be delivered personally.  In such situations, she is required to find co-workers who accept the documents and take them "to the back."  Ms. Sanchez did not remember being served documents that were for Mr. Herrera personally.

   As defense counsel noted at the hearing, there is a difference between accepting certified mail and accepting service of process.  Based on Ms. Sanchez' testimony regarding her job duties, it is not clear that she had the requisite authority under the rules of service to accept service for either Mr. Herrera or the law firm.  Plaintiff's counsel attempted to draw out testimony from Ms. Sanchez on cross-examination that Ms. Sanchez either opened the certified mail, or was authorized to accept mail that was to be hand-delivered to Mr. Herrera personally.  However, Ms. Sanchez's answers remained consistent that she had authority to sign for, but not open, the incoming certified mail, and that she was not authorized to accept mail that was to be hand-delivered.  While Ms. Sanchez physically received and logged in the certified mail, her authority was limited.  Her duties on this level were non-discretionary and technical; she did not open and examine the papers and documents before passing them along to appropriate staff members.  She was instructed not to accept papers that were personally directed to Mr. Herrera.  Thus, Plaintiff has not satisfied his burden of showing that Ms. Sanchez was an agent authorized to accept service on behalf of Mr. Herrera or his law firm.  *See Nature's First Inc. v. Nature's*

*First Law, Inc.*, 436 F.Supp.2d 368, 372 (D.Conn.,2006) (plaintiff has burden to prove that agent is one authorized by statute to receive service).

In her affidavit, Ms. Sanchez disavowed any memory of being given the serving papers. Doc. 11-2. She also stated, assuming she was served, that she "must have lost the paperwork and forgotten about being served and the lawsuit." She claims she did not give the documents to Mr. Herrera, and that she is the receptionist for the law firm, not an office manager. The Court finds that Ms. Sanchez proved to be a credible witness at the hearing, even though some of her recollections may have been faulty. For example, she testified that she did not remember receiving the certified mail sent to her by Ms. Seff, even though Plaintiff submitted a copy of the return receipt with a signature by "Pauline Sanchez." *See* Doc. 11-1 Doc. 12-1. However, the Herrera law firm logbook does not include a listing for the receipt of the certified mail which was purportedly sent to the law firm, which supports Ms. Sanchez' statements that she did not remember including the certified mail documents in the logbook.

There was some discussion at the hearing as to whether Ms. Seff's affidavit should be considered hearsay, and the Court deferred ruling on this issue. Ms. Seff stated in that affidavit that she sent the Summons, Complaint, Civil Cover Sheet and an Acceptance of Service form to the Herrera Law Office, and received back a copy of the certified label and signed return receipt. Ms. Seff also stated that she personally delivered the same documents to the Herrera law office, and that these documents were accepted personally by Ms. Sanchez who assured her that she would give them to Mr. Herrera. Doc. 12, Ex. 1. However, Ms. Seff was not available at the evidentiary hearing to testify to her statements. While the Court will not necessarily rule that Ms. Seff's affidavit is hearsay, Ms. Seff's statements were not subject to the same scrutiny for credibility and demeanor as were Ms. Sanchez' statements, and thus cannot be given the same weight.

There are other problems with service effected on Mr. Herrera individually. Even if Ms. Sanchez did accept the documents personally from Ms. Seff, there is no basis for considering Mr. Herrera's office as a "usual place of abode." In order for this method of service to be effective, both Mr. Herrera *and* Ms. Sanchez must have been "residing" at the office. *See U.S. v. Rose*, 437 F.Supp. 2dd 1166 (S.D.Cal. 2006) (dwelling-house service requires that address be defendants' usual place of abode *and* that papers be left with someone actually residing there); *Srein v. Silverman*, 2001 WL 366620 at *2 (E.D.Pa. 2001) (same). The only other effective means of service on an individual involves personal service and service on an authorized agent. It is undisputed that Mr. Herrera was not personally handed the documents, and the Court has found that Ms. Sanchez was not an "authorized" agent for this purpose.

In the end, it appears that service was not proper on either Mr. Herrera or the Herrera Law Firm, primarily because Plaintiff has not shown that Ms. Sanchez was authorized to accept service on behalf of Mr. Herrera or his law firm. There are inconsistencies between Ms. Sanchez' testimony and the statements in Ms. Seff's affidavit, but these inconsistencies are a long way from showing culpable conduct on the part of Defendants. Moreover, Ms. Sanchez appeared and testified in person while Ms. Seff did not. Defendants have therefore satisfied the first prong of the good cause standard.

## II.     Prejudice

Defendants contend that Plaintiff would not be prejudiced if the default were set aside, and the Court agrees. There has been no discovery, and little time or money spent thus far in the litigation of this case.

## III.    Meritorious Defense

Defendants present several reasons why the default should be set aside on the grounds that they have a meritorious defense to the underlying case. The Court rejects several of these

8

arguments.  For example, the *amount* of damages Plaintiff may be awarded if he prevails on this legal malpractice has no bearing on whether Defendants have a meritorious defense to Plaintiff's claims, or whether the default was caused by Defendants' culpable conduct.  The Court also rejects Defendants' argument that Plaintiff failed to file notice under the Tort Claims Act, for two reasons.  First, as Plaintiff notes, the notice defense does not apply to Tort Claims Act claims against individual employees of governmental entity.  *Dutton v. McKinley County Bd. of Com'rs*, 113 N.M. 51, 53  (N.M.App.  1991).[2]  Plaintiff also points out that actual notice to the entity would have been sufficient as notice to allow the Tort Claims Act claims to go forward, but this is not entirely correct, because the existence of actual notice is generally a factual matter for which an evidentiary hearing is required.  *See Lopez v. State*, 122 N.M. 611, 616, 930 P.2d 146, 151 (N.M.,1996). Second, Defendants could have included civil rights claims in the complaint, or amended the complaint to add such claims once it became clear that the state claims would be dismissed for failure to exhaust.

However, Defendants make other arguments which the Court finds are sufficient as a basis to establish a meritorious defense. Plaintiff contends that Defendants focus incorrectly on the elements of a legal malpractice claim, rather than the federal law standard under Rule 55(c) for setting aside an entry of default.  Plaintiff overlooks the fact that, in these circumstances, the two standards cannot be separated. In considering whether Defendants pose a meritorious defense to the legal malpractice claims at issue in the instant lawsuit, the elements of a legal

---

[2] While written notice is not required for Tort Claims Act claims against individual employees, lack of such notice "keeps from a jury the fact of the City's vicarious liability in a suit. . . if the municipality has not received either written or actual notice of the claim." *Martinez v. City of Clovis*, 95 N.M. 654, 656 (N.M.App., 1980).  Thus, while written notice to an entity is not required, failure to give such notice has consequences: a plaintiff cannot hold the entity vicariously liable, or seek damages from, an entity that is not a party to the lawsuit where written notice was not given.

malpractice claim must come into play. Under New Mexico law, to recover on a legal malpractice claim based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Ranch del Villacito Condominiums, Inc. v. Weisfeld*, 121 N.M. 52, 55-56 (N.M.,1995).

It does not take much to establish the existence of a meritorious defense sufficient to set aside a default—only the alleging of sufficient facts that, if true, would constitute a defense. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085 (9th Cir. 2010); *Mohamad v. Rajoub*, 634 F.3d 604, 606, 394 (C.A.D.C., 2011) (allegations are meritorious if they contain even a hint of a suggestion which, proven at trial, would constitute a complete defense). Here, Defendants argue that Plaintiff would not have been able to prevail on the merits in the underlying case involving the shooting by officers, and as a result, would be unable to show that Mr. Herrera's negligence proximately caused him any loss.

The Court certainly does not condone or excuse in any way, Mr. Herrera's attempts to pass off his duties as Plaintiff's counsel in the underlying case by blaming Mr. Smith for a failure to prosecute the case. Mr. Herrera had a duty to represent Plaintiff in the civil lawsuit, which was not attenuated or modified in any way by the language in the contract that allowed Mr. Herrera to associate with another attorney in litigating the case. *See* Doc. 20-3. However, the problem is that, without actually trying the underlying case, it is difficult to determine whether there is any merit to Plaintiff's claims against any party for the shooting. In December 2008, Plaintiff was indicted, and later pled guilty/no contest to charges of shooting from/into a vehicle; conspiracy of the same; and tampering with evidence. *See* Doc. 11 at 1; Doc. 20-5. Thus, it is reasonable to expect that the subsequent criminal charges to which Plaintiff pled would have had a negative effect on his credibility in a civil lawsuit alleging excessive force by

10

law enforcement officers.[3]

It is undisputed that the complaint in the state civil lawsuit was filed in September 2008, and that is was dismissed for failure to prosecute in December, 2009. According to the time line elicited from the pleadings, as well as from Mr. Herrera's testimony at the hearing, Mr. Herrera reimbursed Plaintiff's mother the unused part of the $2000 retainer in September 2010, almost a year *after* the case was dismissed. What is not clear, however, is when Mr. Herrera informed Plaintiff that he would not be continuing to represent him. Mr. Herrera states that he learned about Plaintiff's subsequent criminal charges only a few months after the complaint was filed, *see* Doc. 20-2, and then spoke with Plaintiff about discontinuing representation. Thus, there appears to be some dispute regarding whether Mr. Herrera spoke with Plaintiff prior to returning a portion of the retainer to Plaintiff and prior to dismissal of the civil lawsuit. These facts may or may not be enough to establish a likelihood of success, but it is just enough for Defendants to support the existence of a cognizable defense to the legal malpractice claims.

Accordingly, I find that Defendants have met the good cause standard under Rule 55(c) to set aside the entry of default.

D.     **Sanctions as Less Drastic Alternative**

In general, courts have expressed a "strong preference" that defaults be avoided and that claims and defenses be disposed of on their merits. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Tazco, Inc. v. Director, Office of Workers Compensation Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir.1990) ("The law disfavors default judgments as

---

[3] Defendants have attached a copy of an article from the Albuquerque Journal dated September 29, 2005, less than a month after Plaintiff was shot, which reports that the shooting was justified. Doc. 20-6. The Court recognizes this evidence as hearsay, and more likely, double hearsay as statements made by a Las Cruces district attorney to the reporter. Nevertheless, it demonstrates the difficulty of trying to assess the worth of the case, even without the credibility issues.

11

a general matter."); *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008) (noting that doubts concerning whether good cause has been met are resolved in favor of lifting the default);

      Having determined that the default should be set aside, I also find that the matter should not end there. As discussed previously, there remain some questions regarding the effectiveness of service. While the Court finds Ms. Sanchez to be a credible witness, her testimony leaves the Court with the impression that the incoming mail policies used by the Herrera Law Firm would make it easy for Mr. Herrera to avoid service if he decided to go that route. The Court agrees with Plaintiff there was probably some knowledge on his part that this litigation was brewing, and he was about to be sued. On the other hand, because Plaintiff resorted to methods of service that attempted to shortcut the requirements under the federal rules of procedure, the Court can not find Defendants' conduct to be culpable under the good cause standard. However, the Court can find—and does find—Defendants' conduct sufficiently substandard so as to consider other sanctions that are more appropriate. *See Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir.1988) (because default judgment deprives a litigant of his or her day in court, it is appropriate "only where a lesser sanction would not serve the interest of justice" (quoting *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir.1986)). The nature of a particular sanction should be related to the "selection of the person against whom it is to be imposed and the choice of appropriate sanctions," including monetary sanctions. *Russell v. Weicker Moving & Storage Co.*, 746 F.2d 1419, 1420 (10th Cir.1984); *see also Meade*, 841 F.2d at 1520 n. 7 (citing cases requiring consideration of less drastic alternatives).

      The Court finds that sanctions are appropriate in the form of attorney's fees and costs against Defendants for Plaintiff's counsel, including counsel's fees and costs associated with the request for the entry of default (Doc. 5) and the motion for default judgment (Doc. 10). Upon the submission of an affidavit and time sheet from Plaintiff's counsel within 14 days of this

Order, Defendants will have 14 days to contest the reasonableness any fees or costs claimed by Plaintiff's counsel.

### Conclusion

In sum, I find and conclude that Defendants have met the good cause standard under Rule 55(c) to set aside the entry of default, and thus, Plaintiff's motion for a default judgment is denied, and Defendant's motion to set aside is granted on that basis.[4]

I also find and conclude that sanctions against Defendants are appropriate in the form of attorney's fees and costs associated with the filing of a request for the entry of default (Doc. 5) and the motion for default judgment (Doc. 10).

Following the entry of this Memorandum Opinion and Order, this case shall proceed along the normal litigation course. Defendants shall file an answer **on or before** twenty-one **(21)** days from the entry of this Order.[5]

As a result of the Court's findings herein, the Entry of Default entered by the Clerk (Doc. 8) will be SET ASIDE.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment as to Defendants and Request for Evidentiary Hearing **(Doc. 10)** is GRANTED as to the evidentiary hearing, and DENIED as to the motion for default judgment, for reasons described in the above Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant's Motion to Set Aside Default **(Doc. 11)**

---

[4] Despite the problematic aspects of service in this case, the Court assumes that by this point, Defendants have waived service. If this assumption is incorrect, Defendants should advise the Court by formal pleading, in which case the Court will redirect Plaintiff to effect service on Defendants at Defendants' expense.

[5] This deadline tracks the usual deadline for responsive pleadings under the federal procedural rules. *See* Fed.R.Civ.P. 12(a)(1).

is hereby GRANTED for reasons described in the above Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the Clerk's Entry of Default **(Doc. 8)** is hereby SET ASIDE;

**IT IS FURTHER ORDERED** that sanctions will be imposed against Defendants in the form of attorney's fees and costs, associated with Plaintiff's request for the entry of default (Doc. 5) and the motion for default judgment (Doc. 10); and that Plaintiff's counsel shall submit to the Court within fourteen **(14)** days of the entry of this Memorandum Opinion and Order an affidavit and time sheet for the relevant fees and costs; and that Defendants will have fourteen **(14)** days to contest any fees or costs claimed by Plaintiff's counsel.

**IT IS FINALLY ORDERED** Defendants shall file an answer on or before twenty-one **(21)** days from the entry of this Order.

_____
UNITED STATES DISTRICT JUDGE